### In re BOSCHELLI.

(District Court, M. D. Pennsylvania. December 22, 1910.)

No. 1,266, in Bankruptcy.

1. BANKRUPTCY (§ 188*)—CLAIMS—ESTOPPEL OF CLAIMANT.
Where rent distrained for was all due, when the landlord also became bankrupt, and the claimants of the property distrained could not have escaped from the landlord's right by having moved earlier, any better than they could thereafter, the landlord was not estopped from prosecuting his distraint as against the claimants, because, by representation made by him at a meeting of creditors held to untangle his affairs, the claimants were induced to delay action.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

2. BANKRUPTCY (§ 188*)—PROCEEDINGS BY LANDLORD—STAY—APPRAISEMENT.
Where a landlord, having instituted distress proceedings against a bankrupt tenant, was stayed by· the bankruptcy court, his rights in the bankruptcy proceedings pursuant to such distraint were not affected by his failure to have proceeded to an appraisement.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

3. BANKRUPTCY (§ 188*)—RIGHT OF DISTRESS—GOODS HELD BY TENANT UNDER CONDITIONAL SALE—GUARANTY OF PRICE BY LANDLORD—ESTOPPEL.
Where a landlord guaranteed payment by his tenant for certain fixtures sold to the tenant under a conditional sale in the form of a lease, the landlord, though subsequently becoming a bankrupt, on the bankruptcy of his tenant could not distrain on the fixtures so held as against the conditional vendor; the vendor's right to reclaim the property being a part of the security.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

In the matter of bankruptcy proceedings of Angelo A. Boschelli. On certificate to review order of referee denying the petition of the Brunswick-Balke-Collander Company to reclaim certain fixtures. Order reversed, and petition granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John E. Fox, for petitioners.
Robert Snodgrass, opposed.

ARCHBALD, District Judge. This is a proceeding to reclaim certain property. The facts on which it depends are not in controversy. On October 9, 1907, the bankrupt, Angelo A. Boschelli, who was engaged in conducting the Metropolitan Hotel in the city of Harrisburg, under lease from M. P. Johnson, the owner, ordered and agreed to buy from the Brunswick-Balke-Collander Company, the present claimants, certain bar fixtures, which were to be made for him. The price was to be $7,500, of which $1,000 was to be paid in cash, and the rest by two notes of $3,250 each, at 6 and 12 months, which were to be indorsed by the landlord, M. P. Johnson. At the foot of this order Mr. Johnson agreed in writing "to sign the above-mentioned notes in the capacity of a guarantor." Subsequently, on March 2, 1908, the fixtures were delivered and set up in the hotel; the down payment of $1,000 being made, and the two notes being given, indorsed by Mr. Johnson. At the same time also an agreement was entered into, by which the Brunswick-Balke-Collander Company leased the property to the bankrupt for the term of 12 months, for the sum of $7,500, payable in the way specified, title to remain in that company as lessor until the so-called rent had been fully paid, after which the bankrupt might acquire the property on payment of a dollar. Nothing, however, except $1,000 was paid on this lease, and within a very few months both Mr. Boschelli and Mr. Johnson became involved in financial difficulties, and in July, 1908, first one and then the other made an assignment for the benefit of creditors under the state law; and this was followed in September by involuntary proceedings in this court, on which each was subsequently adjudged a bankrupt. Before this, however, although after proceedings against Mr. Johnson were instituted, a large amount of rent being due for the hotel, Mr. Johnson's assignee issued a landlord's warrant for $13,070.26, and all the personal property in the hotel was levied on, including the bar fixtures now in question. This precipitated the bankruptcy proceedings against Mr. Boschelli, and, on application to this court, an order was made staying the distress. And this was the situation when the present petition was filed by the Brunswick-Balke-Collander Company to reclaim the property.

The right of Mr. Johnson, or his assignee, as owner of the hotel, to distrain on the personal property there for the rent in arrears, under ordinary circumstances, would not be open to question. It is contested here, however, on the ground that Mr. Johnson was estopped by the representations which he made at the meetings of creditors, held for the purpose of trying to untangle his affairs and get him on his feet, by which, as it is said, the present claimants were lulled into inaction. The distress is also said to be invalid, no appraisement having been made, as required by the statute. And it is further contended that Mr. Johnson had no right to distrain on the goods in the face of his having guaranteed their payment.

There is no occasion to stop long over the first two suggestions. It is not shown what the claimants would have done, had it not been for

the oversanguine views about getting financial help which were advanced by Mr. Johnson. The rent, which is distrained for, was all due, and the claimants could not escape from under it, had they moved earlier, any better than they can now. There are other things to be said upon the subject, but this disposes of it. And as to there having been no appraisement, it is difficult to see how the landlord could proceed with the distress, after the court had told him to stop. The guaranty, however, is a more serious matter.

In undertaking, by his indorsement, that the notes given by the bankrupt for the property would be paid, Mr. Johnson put it out of his power to proceed against it by a distress; this, in effect, destroying the obligations for which he was surety. With the property seized by him as landlord for the rent of the hotel, the claimants could not demand anything for the use of it of which the bankrupt was thus deprived; and the landlord, having indorsed the notes given for its use, could not be permitted to wipe out in this way the consideration of that for which he had made himself responsible. Nor could he as surety do anything to impair the right, which the claimants had, to retake the goods in case of a default, as provided in the agreement. He knew, when he agreed to indorse for the bankrupt, that the claimants reserved this right, and it would be utterly subversive of it, if, after the goods had been put into the hotel, he could nevertheless distrain on them. The right to reclaim was a part of the security on which they were parted with, and operated to the benefit of the landlord as indorser, as well as the claimants; and if they could not forego it to his detriment, neither should he be allowed to interfere with it, because the goods happened to be on his premises.

It is said, however, that the right of distress is given by the law, and is not lightly to be dispensed with; and that a waiver is not to be implied in this instance, Mr. Johnson not having signed the printed release on the back of the agreement with the bankrupt, which the claimants evidently take pains to exact in like cases, when that is the understanding. But the mere fact that this printed form was unsigned does not do away with the effect of the arrangement, which, if the conclusion reached with regard to it is correct, was good without that. The law goes to the extreme in subjecting the goods of another than the tenant to distress for rent, because of being found on the premises. And it is no more than just to hold the right waived, where they have been put there, as here, upon the undertaking of the landlord that he would see that they were paid for.

It is true that the landlord is now in bankruptcy, and his creditors are to be reckoned with, and that they are entitled to all that his estate can be made to realize. But bankruptcy, where there is no fraud, does not disturb contract relations, nor equities growing out of them. And if the landlord impliedly released the goods, or estopped himself from proceeding against them by becoming surety for what was to be paid on account of them, this is not to be undone in the interest of creditors, because he subsequently became bankrupt.

The referee is reversed, the petition is sustained, and the trustee is directed to turn over to the petitioners the property in question.